S. Win. Wilson and W. A. Hindman, *v.* Robert N. Marvin, Rulof Rulofson and the Devisees of Richard P. Marvin, Deceased, Appellants.

*Land law—Warrants—Mistake—Tax—Sale.*

Where land is assessed for taxes as a part of a particular warrant, and the owner after careful and conscientious investigation decides that it is included in another warrant which he owns and on which he has paid taxes, and permits the sale of the land, as assessed, for taxes, and it subsequently appears that the land was really in the warrant in which it was assessed, the owner cannot allege his mistake as a ground for setting aside the sale.

*Land law—Boundaries—Evidence—Question for jury.*

In a dispute over the boundary of a warrant, the case is for the jury where plaintiff fixes the boundary by measurement from a well established corner of a neighboring warrant, while defendant locates it by marks on the ground and by the north line of another warrant adjoining on the south.

Argued Oct. 10, 1895. Appeal, No. 143, Oct. T., 1895, by defendants, from judgment of C. P. Jefferson Co., on verdict for plaintiffs. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL and FELL, JJ. Reversed.

Ejectment for one hundred and forty-one acres of land in Eldred township. Before MAYER, P. J., of the 25th judicial district, specially presiding.

The facts will be found in the opinion of the court overruling the motion for a new trial and in the opinion of the Supreme Court.

At the trial the court gave binding instructions for plaintiffs. [1]

Defendants' points were as follows:

1. If the jury find that the land in controversy is within the location of warrant No. 3400, made by Ennion Williams in 1793, and within the tract No. 3400 as that tract is represented upon the map of Jefferson county, kept in the commissioners' office at the time of, and for many years before, the treasurer's sales of 1874; that the subsequent location of that warrant by John Broadhead was made without any order of the board of property and was unknown to the defendants, and that the quantity of land owned by the defendants in Eldred township, within the lines of any and all locations of warrants Nos. 3400 and 3540 of which evidence has been given, was, at the date of the assessment for 1872 and 1873, less than 400 acres, they will be justified in further finding that the assessment in the names of defendants' predecessors in title—Howe, Blake & Company —of 400 acres, with the addition of the No. 3400, is referable to, and identifies the land in controversy, and other contiguous land of the defendants in tract No. 3400.

Not answered. [2]

2. If the jury find that the defendants made reasonable efforts in 1872 and 1873 to ascertain how their lands were assessed with a view to paying the taxes thereon, and that such efforts resulted in a reasonable conviction that the assessment " Howe, Blake & Company, No. 3400, 400 acres " covered and included the land in controversy, and paid the taxes levied upon such assessment, then the assessment " Howe, Blake & Company, No. 3540, 141 acres," must be regarded as a double assessment and the sale thereunder void.

Not answered. [3]

3. If the jury find that the south line of No. 3540 is coincident with the south line of the McNaughton farm, and also with the north line of the Dr. William Smith survey, then in no event can the plaintiffs recover any land south of the said McNaughton line extended eastward.

Not answered. [4]

The acts and declarations of the parties owning the land on either side to the south line of tract No. 3540 from the earliest times of which there is any knowledge by living witnesses, and

information by tradition and record, are evidence of the true location of that line.

Not answered. [5]

Verdict and judgment for plaintiffs.

The court filed the following opinion on a motion for a new trial.

After the testimony was closed, and the arguments of counsel made, we directed the jury to render a verdict for plaintiffs. Since the rendition of the verdict an able argument was made by the counsel for the defendants, on the motion for a new trial, but it failed to convince us that we were in error in directing a verdict for plaintiffs, and we now put on record our reasons for such direction.

This ejectment was brought to recover possession of one hundred and forty-one acres of land situate in Eldred township, Jefferson county, being part of warrant No. 3540, granted by the commonwealth to William Bingham, on the 14th day of December, 1792, and surveyed in pursuance of said warrant on the 18th day of August, 1794. It contains, according to the return made into the land office, eleven hundred acres and allowance. The assessor of Eldred township, in 1872 and 1873, returned for taxation one hundred acres of tract No. 3540, in the name of Howe, Blake & Co., upon which county, road, school, school building and bridge taxes were levied for those years. These taxes not having been paid, the treasurer of Jefferson county, on the 8th day of June, 1874, sold the land to Tobias Painter, to whom a deed, dated September 17, 1874, was executed and delivered by the treasurer, which was recorded in Jefferson county on the 8th day of June, 1878. From this treasurer's sale there was no redemption. Tobias Painter, on the 15th day of December, 1883, executed and delivered to S. Win Wilson and W. A. Hindman, the plaintiffs, a deed for the same land, which deed was recorded in Jefferson county the same day.

To constitute a valid sale of unseated land for taxes, it must appear that the land was unseated at the time of the assessment, that a tax appears to have been, and was in fact assessed upon it by the proper officer, and that the tax has been due for one year and unpaid: Laird v. Heister, 12 Harris, 452. And it is sufficient if the land is assessed in the name or names of any

person or persons in any way connected with the title to the land, so that the land assessed, taxed and sold can be identified.

"Unseated land assessed is the debtor for taxes, and it is immaterial in what name it has been assessed, if there is sufficient evidence to satisfy the jury that the land in question was that which was taxed and sold, and that it was at the time unseated." Russel v. Werntz, 12 Harris, 338.

That the land sold by the treasurer was, at the time of its assessment, unseated, is not disputed, and that the assessment leads to its identification cannot be controverted. Howe, Blake & Co., in whose names the land was assessed, had been the owners of part of warrant No. 3540 for a number of years. One hundred and fifty acres of this warrant were assessed to them as owners in Eldred township from 1842 to 1851, and one hundred and forty-one acres were assessed to them as owners from 1852 to 1873, and the taxes for all these years paid by them on such assessment until 1872 and 1873, when it was sold by the treasurer. That the taxes levied on No. 3540, one hundred and forty-one acres in Eldred township, were not paid, will appear by the testimony of E. A. Wilson, former treasurer of Jefferson county, who made the sale, a witness called by defendants. He testified that when Rulof Rulofson came to his office to pay the taxes upon his land in Jefferson county, for 1872 and 1873, he refused to pay the taxes on warrant No. 3540, one hundred and forty-one acres, and that it was then sold.

Rulof Rulofson states in his testimony that he found that the different warrants assessed in the names of Howe, Blake & Co. called for more land than the defendants had purchased, and that he procured James Caldwell, a surveyor, to make a draft of their lands by which he could pay his taxes properly, and then he paid the taxes according to this draft. The draft of Caldwell does not show upon it any land of Howe, Blake & Co. lying in Eldred township in warrant No. 3540, but shows warrant No. 3400 containing four hundred and seventy acres. Caldwell states in his testimony that when he made the draft he did not know that there was any such warrant as 3540 in Jefferson county or any portion of it; that it was not until he sent to Harrisburg for the official papers that he discovered that a portion of warrant No. 3540 lay in Eldred township, Jefferson county.

VOL. CLXXII—3

The defendants could not by the payment of taxes on four hundred and seventy acres of land in warrant No. 3400, even though it was all the land they owned in Eldred township, change the assessment of No. 3540.  It was their duty, if they were paying taxes on all their lands in Eldred township, includ-, ing what was in warrant 3540, to have had the commissioners correct the assessment and not allow warrant 3540 to be sold. The fact is they were misled by the draft of James Caldwell, and their mistake as to payment of taxes will not exempt No. 3540 from sale by the treasurer.  It is not a case of inter-ference of surveys, and where payment of taxes on one survey discharges the taxes assessed on the other.  It is not pretended that there is any interference between warrant No. 3400 and 3540, but they adjoin each other.

We are clearly of the opinion that the sale by the treasurer of Jefferson county to Tobias Painter, and by Painter to the plaintiffs, vested a good title in the plaintiffs to that portion of warrant No. 3540 which lay in Eldred township.

There is not much controversy between the plaintiffs and defendants in regard to the location of that portion of tract No. 3540, which lies in Jefferson county, except as to the south-ern line.  Warrant No. 3540 was surveyed on the 18th day of August, 1794, and lying around it are warrants Nos. 3407, 3548, 3542, 3541 and 3400, which were surveyed on the 12th, 13th and 18th days of August, 1794.  On the east of warrants Nos. 3400 and 3407 are warrants Nos. 3545 and 3548, which were surveyed on the 5th day of September, 1793, and are the eastern boundary of warrants Nos. 3400 and 3407.  No. 3407 calls for a chestnut oak corner as its northeast corner, which is also the northwest corner of No. 3548; and No. 3407 calls for a hemlock as its southeast corner, which is also the south-west corner of 3545.  The chestnut oak corner, the common corner of 3407 and 3545, is found on the ground, and witnesses are found on the ground to the hemlock corner, which is now a stump.  And a line of 1793 is found on the ground between these corners.  All the surveyors agree as to the location of the line from the chestnut oak corner to the hemlock.  The chestnut called for as the northeast corner of No. 3400 and the northwest corner of 3545 was not found by the surveyors. They ascertained and located this corner by dividing the dis-

tance between the chestnut oak corner and the hemlock.  From this point they ran westward on the north line of No. 3400 and the south line of No. 3407 the official distance $132\frac{4}{10}$ perches to the northeast corner of 3540 ; thence south the official distance $165\frac{4}{10}$ perches to a point; thence westward to the Jefferson county line, and from thence the official courses and distances of No. 3540.  This would determine the location of No. 3540 according to the official return.  While the defendants concede that the north line of 3540 is properly located by plaintiffs' surveyors, yet they contend that the warrant cannot go southward its official distance for the reason, as they claim, that in 1834 one Daniel McNaughton purchased of the Bingham estate a portion of No. 3540, and that the southern line of 3540 was then run and established and has been recognized ever since. The portion of 3540 purchased by McNaughton lay in Clarion county, and the line run for him did not extend into Jefferson county.  So that even if it could be claimed that the McNaughton line fixed the southern boundary of 3540, which lay in Clarion county, the location of that portion of 3540 which lay in Jefferson county would not be affected.  Neither is the location of that part of 3540 which lies in Jefferson county affected by the location of the Smith survey, as that was located in Clarion county, and did not extend over the Jefferson county line.

We are clearly of the opinion that the plaintiffs have established the location of 3540 as claimed by them, and are entitled to recover the land in controversy.  We therefore directed the jury to find a verdict for the plaintiffs for all that certain piece, parcel and tract of land bounded and described as follows: Beginning at a post, the northeast corner of warrant No. 3540 (the position of said post to be determined as hereinafter shown), thence along warrant 3400 south $165\frac{6}{10}$ rods to a post, the southeast corner of No. 3540, thence along the same warrant (No. 3400) west 120 rods to a corner of said 3400, on the line between Clarion and Jefferson counties, thence north along said county line $165\frac{6}{10}$ rods to a post on the north boundary of said warrant No. 3540, thence along warrant No. 3407 east 120 rods to the place of beginning; containing one hundred and twenty-four and one fifth acres, and being all that part of warrant No. 3540 which lies in Jefferson county; the said post, north-

east corner of warrant No. 3540, to be located as follows: beginning at the original chestnut oak, corner of warrants Nos. 3407, 5091, 3547 and 3548, thence south along the original line of 1793, 318 rods to the southeast corner of warrant 3407 and northeast corner of 3400, thence west on the line between said last named warrants $132\frac{4}{10}$ rods to the place of the post, northeast corner of said warrant No. 3540.

*Errors assigned,* were (1–5) above instructions quoting them.

*C. Heydrick, Alexander C. White* and *Carl I. Heydrick* with him, for appellants.—It is submitted that payment of the taxes levied upon an assessment which, without such payment, would have been a good foundation for a tax title, discharged the public burden upon the land of these defendants, ascertained long afterwards to be within Broadhead's location of 3540, and that the assessment " Howe, Blake & Co., No. 3400, 141 acres " must be regarded as a double assessment.

The evidence of location submitted by defendant was sufficient to send the case to the jury: Nieman v. Ward, 1 W. & S. 68; McCausland v. Fleming, 63 Pa. 36; Kennedy v. Lubold, 88 Pa. 246; Kramer v. Goodlander, 98 Pa. 366; Moul v. Hartman, 104 Pa. 43; Reed v. Farr, 35 N. Y. 113; Kellogg v. Smith, 7 Cush. (Mass.)

*George A. Jenks* and *B. J. Reid, Geo. W. Means, B. M. Clark* and *F. J. Maffett* with them, for appellees.—Cited on the question of location: Malone v. Sallada, 48 Pa. 419; Boynton v. Urian, 55 Pa. 142; Darrah v. Bryant, 56 Pa. 69; Ormsby v. Ihmsen, 34 Pa. 462; Packer v. Schrader, M. & M. Co., 97 Pa. 379; Grier v. Pa. Coal Co., 128 Pa. 79.

Cited on the question of title: Lamb v. Irwin, 69 Pa. 436; Brown v. Day, 78 Pa. 129; Williston v. Colkett, 9 Pa. 38; Brown v. Hays, 66 Pa. 229; Putnam v. Tyler, 117 Pa. 570; Fritz v. Brandon, 78 Pa. 342; Brandon v. Fritz, 94 Pa. 108.

OPINION BY Mr. JUSTICE WILLIAMS, November 4, 1895:

The plaintiffs' title to the land in controversy depends upon a treasurer's sale made in 1874 of a lot of unseated land, part of warrant No. 3540. This lot was owned at the time of sale by

Howe, Blake & Co., and was part of a large body of contiguous lands owned by them. When they came to pay their taxes for 1872 and 1873 the question presented itself to their minds whether this lot was in No. 3540 or in No. 3400. They investigated it, procured a map of their lands to be made, and with such light as was thrown upon the question by the county map of Jefferson county and by the result of their own inquiries they decided that the lot was in No. 3400. They paid the taxes on that warrant, which was owned by them, and refused to pay the taxes assessed upon the lot as part of No. 3540. It is now evident that they reached a wrong conclusion. The honesty of their purpose to pay all the taxes justly chargeable to them, and the conscientious character of their effort to settle the question of the true location of the lot, cannot relieve them from the legal consequences of their mistake. They allowed the lot to be sold as part of No. 3540, and it now turns out that it was located in that warrant. The taxes were a charge upon the land, they were unpaid, and the treasurer's sale vested the title in the purchaser. The first, second and third assignments of error must therefore be overruled.

The only other question presented upon this record is whether the location of the south line of tract No. 3540 is upon the evidence that was before the court and jury a question of fact for the jury or of law for the court?

The lot in question lay at the eastern end of No. 3540 and in the county of Jefferson. The remainder of the tract was in Clarion county. The north line of the tract may be treated as settled in accordance with the claim of the plaintiffs. The east line was not disputed. In the language of the learned trial judge " There is not much controversy between the plaintiffs and defendants in regard to the location of that portion of tract No. 3540 which lies in Jefferson county except as to the southern line." This was in controversy. The defendants located it on the north line of the Smith survey which was several years older than 3540 and was directly south of it. For a distance of four hundred and thirty-two rods westerly from the county line it was the southern boundary of 3540, and a protraction of this line easterly to the end of the tract would leave a considerable portion of the land claimed by the plaintiffs to fall into tract No. 3400 which the defendants owned. It was claimed that an

original mark had been found on this line corresponding with the date of the survey, and that the owners of 3540 or several of them had for many years known and recognized the line set up by the defendants as the true south line of the survey. This evidence was for the jury. The defendants' third point presented the question very clearly. It asked an instruction that " If the jury find that the south line of No. 3540 is coincident with the south line of the McNaughton farm, and also with the Dr. William Smith survey then in no event can the plaintiffs recover any land south of the McNaughton line extended eastward." This point should have been affirmed and the question of fact assumed should have been submitted to the jury with suitable instructions.

It may be that the learned judge reached a correct conclusion upon the question of fact, and one that would have been reached by the jury if the question had been submitted to them. On the other hand the jury may have found in accordance with the contention of the defendants. There was evidence bearing upon the question which it was their province to weigh, and the conclusion from which it was their appropriate function to draw, and the evidence should have gone to them.

This case was otherwise well tried, but the learned judge erred in giving a binding instruction to the jury to find in favor of the plaintiffs as to that part of the tract involved in the controversy over the location of the south line. For so much of the land as was north of an extension of the north line of the Smith survey or the McNaughton line, a binding instruction was entirely proper; but for so much as was south of that line the right of the plaintiffs depended upon what the jury might find the fact to be as to the character of that line.

The judgment is reversed and venire facias de novo awarded.